**The court incorporates by reference in this paragraph and adopts as the findings and orders
of this court the document set forth below. This document has been entered electronically in
the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: September 27 2019**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 17-52838 |
| | ) | |
| Michael Patrick Kister | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 18-5017 |
| | ) | |
| Skycasters, LLC, et al. | ) | JUDGE MARY ANN WHIPPLE |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Michael Patrick Kister | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF DECISION AND ORDER REGARDING
### MOTION FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on Defendant's Motion for Summary Judgment [Doc. # 31], Plaintiffs' Opposition [Doc. # 36], and Defendant's Reply [Doc. # 37]. Defendant's Motion, Plaintiff's Opposition, and Defendant's Reply, along with supporting documents, were filed under seal as permitted by the court's order of February 21, 2019. [Doc. # 29]. As directed by an order of the court entered on July 2, 2019, and as discussed below, Plaintiffs supplemented their Opposition to the Motion [Doc. # 43] and filed additional documents in support of their Opposition [Doc. # 42], to which Defendant

also responded [Doc. # 45].

Defendant is a debtor in the underlying Chapter 7 case. In their complaint, Plaintiffs allege business losses attributable to Defendant's conduct during and following his employment with Skycasters, LLC. Plaintiffs contend that Defendant owes them a debt that is non-dischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). Defendant seeks summary judgment on all three claims.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) as a civil proceeding arising under Title 11. The proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine dischargeability are core proceedings that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(I). For the reasons that follow, the court will grant in part and deny in part Defendant's motion for summary judgment.

## **EVIDENTIARY ISSUES**

In support of their opposition to Defendant's Motion for Summary Judgment, Plaintiffs submitted the affidavit of Don Jacobs. On July 2, 2019, the court requested supplemental briefing to address evidentiary issues raised by the Jacobs affidavit. [Doc. # 40]. The court expressed concern with portions of the affidavit, specifically, the basis for his claimed personal knowledge, whether his averments were free of inadmissible hearsay, and otherwise constituted admissible evidence. Plaintiffs filed a timely response to the court's order [Doc. # 42] as did the Defendant [Doc. # 43]. Plaintiffs' response includes and incorporates by reference a Supplemental Affidavit by Jacobs dated July 26, 2019. [Doc. # 43].

As summarized by another bankruptcy court in determining the propriety of an affidavit to be considered in a summary judgment motion :

> Civil Rule 56 (c)(4), made applicable by Rule 7056, provides: "An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated." Hearsay is generally inadmissible as evidence. Fed. R. Evid. 802. Federal Rule of Evidence 801 (c) explains that hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Statements of opposing parties offered in their individual capacities are not hearsay. Fed. R. Evid 801(d)(2)(a). When referring to documents, litigants must supply "an original writing to prove its content unless [the Federal Rules of Evidence] or a federal statute provide otherwise." Fed. R. Evid. 1002.

*Herrera v. Scott (In re Scott)*, 588 B.R. 122, 129 (D. Idaho 2018). *See also Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). Once an objection is raised as to admissibility, "[t]he burden is on the

2

proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment.

Plaintiffs' response to the court's inquiry is based on information contained in the following categories: (1) The Joint Stipulation; (2) Jacobs' Supplemental Affidavit; (3) Jacobs' personal knowledge based on his presence at depositions; (4) Jacobs' personal knowledge as Plaintiffs' corporate officer; (5) Jacobs' personal knowledge based on his acquisition of AS assets; and (6) Jacobs' personal knowledge based upon his email correspondence with Don Smith. The court now turns to the specific paragraphs in question.

A. Paragraph 23    "During the course of discovery in the State Litigation, it was learned that – unbeknownst to Plaintiffs – the Consultants were providing services to AS/Kister/McKinney at the same time that said Consultants were providing services to Plaintiffs."

Plaintiffs cite to Paragraph 14 of the Joint Stipulation for supporting undisputed facts contained in paragraph 23. Plaintiffs also reference Jacobs' Supplemental Affidavit, which states at paragraph 9: "The statements set forth in Paragraph 23 of the First Affidavit are supported by the following facts, all of which are within my personal knowledge: a) The sworn deposition testimony of Kister, relevant portions of which are cited in Plaintiffs' Supplement," in support. They contend the referenced deposition transcripts constitute proper evidence under Fed. R. Civ. 56(c)(1)(A).

"The purpose of an affidavit is to ensure that the affiant, under penalty of perjury, has performed the due diligence necessary to attest to the accuracy of his or her statements." *In re Granda*, 396 B.R. 226, 228 (Bankr. S.D. Fl. 2008). Where the best source of the information is contained in the record, referencing the primary source may assuage questions as to admissibility, which will arise in the absence of such references or conclusory assertions as to personal knowledge. This is the exact situation which was presented in Paragraph 23 of the First Affidavit when Jacobs averred to matters "learned" "[d]uring the course of discovery," as well as the other statements in question. There was no reference to the Joint Stipulation, filed with the court in January 2019 [Doc. # 20] or the Kister deposition, which was an exhibit to Plaintiffs' brief in opposition. [Doc. # 36, Ex. 3]. Through the Supplemental Affidavit and additional briefing, Plaintiffs have established the admissibility of the statement in accordance with Fed. R. Civ. P. 56(c)(4).

B. Paragraph 24    "During the course of discovery in the State Litigation, it was learned that, notwithstanding the fact that they were providing services to AS, certain of the Consultants – including Don Smith (Don Smith Consulting) – did not have an agreement with AS. Said agreement was not entered

3

into until June 2013, after Kister had resigned from his employment and; therefore, Kister no longer had the ability to utilize Plaintiffs' funds to pay for said services."

In support of this paragraph, Plaintiffs first point to Jacobs' Supplemental Affidavit wherein he establishes his personal knowledge averring he was present at the Kister deposition. They also cite to pertinent portions of Kister's deposition in their response to the court's order for supplemental briefing. Jacobs' Supplemental Affidavit avers the following at Paragraph 11(b):

"My personal review of AS assets, which are now owned by Skycasters including: (i) an April 20, 2012 email exchange between McKinney and Kister (Kister Depo Ex. 24), attached hereto as <u>Exhibit 1</u>; (ii) an October 10, 2012 email exchange between Kister and Don Smith (Kister Depo Ex. 1020), attached hereto as <u>Exhibit 2</u>; (iii) a March 17, 2013 email from McKinney to Kister (Kister Depo. Ex. 70), attached hereto as <u>Exhibit 3</u>; and (iv) a "Consulting Agreement" between AS and Don Smith (Kister Depo . Ex. 83), attached hereto as <u>Exhibit 4</u>.

Plaintiffs cite to authority from the Sixth Circuit which holds, "[c]orporate officers are considered to have personal knowledge of the acts of their corporations and an affidavit setting forth those facts is sufficient for summary judgment." *Fambrough v. Wal-Mart Stores, Inc.*, 611 Fed. Appx. 322, 330 (6th Cir. 2015), citing *AGI Realty Serv. Grp., Inc. v. Red Robin Intern., Inc.*, 81 F.3d 160 (6th Cir. 1996) (unpublished). Through the Supplemental filings and briefing, Plaintiffs have established admissibility under Rule 56(c)(4) as to Paragraph 24 of the Initial Affidavit.

C. <u>Paragraph 35</u> "During the course of discovery in the State Litigation, it was learned that AS – by and through Kister and McKinney – had entered into business agreements and "partnerships" with Plaintiffs' competitors including, without limitation, ViaSat/Exceed, RigNet, MobilSat and SpaceNet."

Similar to the previously challenged paragraphs, Plaintiffs point to the Joint Stipulation and Supplemental Affidavit to support Jacobs' averments. Plaintiffs contend Jacobs' status as CEO and owner imputes personal knowledge of Plaintiffs' business competitors to him. They cite to the Supplemental Affidavit which speaks to Jacobs' personal knowledge and review of AS documents following Plaintiffs' purchase of those assets arising from the AS bankruptcy. Through their clarifying response, Supplemental Affidavit, and the Joint Stipulation, Plaintiffs have resolved the court's concerns as to admissibility and hearsay under Fed. R. Civ. P. 56(c)(4) as to Paragraph 35 of the Initial Affidavit.

D. <u>Paragraph 25</u> "Upon information and belief, having reviewed the invoices submitted by and payments to, the Consultants between 2012 and 2013, Plaintiffs paid the Consultants for services rendered to AS."

In response to the court's question, Plaintiffs submitted the Supplemental Affidavit of Jacobs wherein he avers he personally reviewed AS documents acquired by Skycasters. He also avers reviewing the invoices submitted to Plaintiffs by two consultants who also did work for AS. Jacobs further contends

the referenced documents are true and accurate business records kept by Plaintiffs. Having established a background for the statements in the Initial Affidavit, Plaintiffs have allayed the concerns regarding Jacobs' personal knowledge as to these statements made in opposition to the summary judgment motion by Defendant.

E. Paragraph 34 "In discussions with representatives of the above referenced accounts, Plaintiffs were told that they were terminating their relationship and obtaining replacement service from various of Plaintiffs' competitors including, without limitation, ViaSat/Excede, RigNet and MobilSat."

The court questioned why this statement was not inadmissible hearsay. In his Supplemental Affidavit, Jacobs avers those statements were within his personal knowledge as follows:

a) Communications between Plaintiffs' representatives and customers who terminated their business relationship with Plaintiffs. In certain instances, I was personally involved in said communications and engaged in direct discussions with representatives of customers who terminated their relationship. In most instances, the departing customer declined to disclose the identity of their alternate internet service provider.
b) In certain instances, Plaintiffs' communications with departing customers were documented by Plaintiffs' representatives and I have had an opportunity to review those business records. Said documents include: (i) an email exchange relating to the termination of Roughriders, attached hereto as Exhibit 16, wherein Roughriders advised Plaintiffs that it was using ViaSat/Excede as an alternative internet service provider.

[Suppl. Affid. at ¶ 22]. Additionally, Jacobs' personal knowledge of the business records by virtue of his position as Plaintiffs' CEO resolves the hearsay concerns. As with the previous statements, based upon Plaintiffs' clarification and Jacobs' Supplemental Affidavit, the court finds Paragraph 34 to meet the requirement under Fed. R. Civ. P. 56(c )(4). With these evidentiary concerns resolved, the court turns to adjudication of the motion.

## FACTUAL BACKGROUND

Unless otherwise indicated, the following facts are undisputed. Plaintiff Skycasters, LLC ("Skycasters") is in the business of providing broadband satellite internet access and data service. [Doc. # 31, Kister Aff., Ex. 1, ¶ 2]. Plaintiff Satventures Management, LLC ("Satventures") provides "management and other services" to various entities including Skycasters. [Doc. # 38, Confidentiality Agreement, Ex. 2, Recital A]. Don Jacobs is both Chief Executive Officer and owner of Skycasters and Satventures ("Plaintiffs"). [Doc. # 36, Jacobs Aff., Ex. 1, ¶ 1].

In January 2008, Defendant Michael Kister was hired to be Vice President of Operations of Skycasters. [Doc. # 20, Joint Stipulation at ¶ 1]. Kister was promoted to President of Skycasters in July 2008 and his responsibilities included running the entire business operation. [*Id*. at ¶ 2]. Kister reported

5

to Don Jacobs. [*Id*.]. As the President of Skycasters, Kister had access to confidential and proprietary information belonging to Plaintiffs and their related entities. [*Id*. at ¶ 4]. Richard McKinney, also employed by Plaintiffs since December 2001, served as a salesman for Plaintiffs as well as their related entities. [*Id*. at ¶ 5].

In October 2010, Kister was approached by McKinney and they discussed the creation of a company that ultimately became known as Acceleration Systems ("AS"). [*Id*. at ¶ 8]. AS is described in the parties' Joint Stipulation of Facts as follows:

> AS was a provider of bandwidth optimization. AS made a customer's already existing internet access and service run faster. Skycasters provides its customers with broadband satellite internet access, satellite VPN equipment, mobile satellite internet, and corporate data services. AS never offered or provided any customer with actual internet access or data service.
>
> Because of the differing nature of the services provided, the business of Skycasters and the business of AS were complimentary [sic]. If a customer purchased AS services, that customer would still need to have internet service or access. As such, merely doing business with AS may not necessarily cause a Skycasters customer to terminate its contract with Skycasters, as that customer would still be required to purchase internet access and service from an ISP.[1]

[*Id*. at ¶¶ 10 and 11].

In January 2011, Kister signed a Confidentiality, Noncompetition and Nonsolicitation Agreement ("Agreement") with Satventures. [Doc. # 38, Ex. A]. The Agreement addresses protection of confidential information and contains a covenant not to compete. The covenant not to compete addresses prohibitions during employment as follows:

> During Recipient's employment with SVM, Recipient covenants and agrees not to compete with the Disclosing Party anywhere in the world, including, without limitation:
> (1) Entering into or engaging in any business which competes directly or indirectly with the Disclosing Party;
> (2) Soliciting customers, business, patronage or orders for, or selling, any products or services that compete with, or for any business which competes with the Disclosing Party;
> (3) Diverting, enticing or otherwise taking away any customers, business, patronage or orders from the Disclosing Party, or attempting to do so; or
> (4) Promoting, financing or otherwise assisting, financially or otherwise, any person, firm, association, partnership, corporation or other entity engaged in business which competes with the Disclosing Party.

---

[1] An abbreviation for Internet Service Provider. Cambridge English Dictionary (2019), https://dictionary.cambridge.org/us/dictionary/english/isp.

[*Id*. at p. 4, ¶ (b)].

On September 12, 2012, Kister, "acting as a manager of AS, executed a signature page of an Operating Agreement." [Doc. # 20 at ¶ 15]. Subsequently, on September 18, 2012, AS was officially formed as a limited liability company, organized under the laws of Kentucky. [*Id*. at ¶ 16]. By December 9, 2012, Kister was listed as President and Chief Executive Officer of AS in a draft "business plan." [*Id*. at ¶ 17]. The parties also stipulated that "AS utilized the services of various third-party independent contractors, some of whom also provided services, in some cases simultaneously, to Plaintiffs, including: (a) Raj Hazaray, Business Analytix; (b) Donald Smith, Donald Smith Consulting; (c) Warren Bailey; and (d) Gary Dague, GMD Creative." [*Id*. at ¶ 14]. It was also agreed that "Kister did not have a prior relationship with these contractors outside of his prior affiliation with Skycasters." [*Id*.].

Kister also attended trade shows while employed by Plaintiffs. [*Id*. at ¶ 27]. It is undisputed that Kister spoke to persons attending the trade shows "to determine whether AS would or could be a viable business." [*Id*.]. Kister made the decision to "resign from Skycasters at some time in 2013 and start working for AS." [*Id*. at ¶ 9]. There is no dispute that "Kister understood and believed that, had his involvement and/or affiliation with AS become known to Skycasters CEO Don Jacobs, Kister would have been fired from his position with Skycasters." [*Id*. at ¶ 13]. During Plaintiffs' business hours, Kister and McKinney engaged in communications regarding AS affairs. [Doc. #31, Ex. 1, ¶ 15].

Kister resigned from Skycasters on March 29, 2013. [Doc. #31, Ex. 1, ¶ 9]. Kister immediately became employed by AS. [*Id*. at ¶ 11]. McKinney continued working for Plaintiffs until on June 27, 2014, [Doc. # 36, Ex. 1, ¶ 5], when he "retired" to work at AS.

In April 2017, Plaintiffs filed suit against Kister, McKinney[2] and Kelly Olsen[3] in the Court of Common Pleas, Summit County, Ohio. *Skycasters, LLC et al. v. Michael Kister, et al.*, Case No. CV-2016-04-1899. Plaintiffs later amended their complaint to add AS as a defendant.

---

[2] On June 24, 2019, a state court jury found in favor of McKinney on "claims of Breach of Duty of Loyalty and Good Faith and Breach of Contract." [Doc. # 45, Ex. 1].

[3] Olsen was also employed by Plaintiffs and subject to confidentiality, nondisclosure, noncompetition, and nonsolicitation agreements with Plaintiffs. [Doc. # 1 at ¶ 20]. Following McKinney's departure from Plaintiffs, Olsen was allegedly recruited by McKinney and Kister, and in June 2015, Olsen left Plaintiffs to become affiliated with AS. [*Id*. at ¶ 62].

7

AS was not a successful venture. According to Kister, AS "was a financial disaster", [Doc. #31, Ex. 1 at ¶ 25]. AS ceased operations and filed its petition for relief under Chapter 7 in October 2017.[4] Kister filed his petition for relief under Chapter 7 on November 28, 2017. *In re Michael Patrick Kister*, Case No. 17-52838 (Bankr. N.D. Ohio).

Plaintiffs initiated this adversary proceeding on March 19, 2018. [Doc. # 1]. Defendant moves for summary judgment contending there is no genuine issue of material fact which precludes judgment as a matter of law in his favor. Defendant contends AS did not compete with Plaintiffs because AS offered complementary services to Plaintiffs' broadband internet access and data services. Kister also argues that any discussions or plans regarding AS did not interfere with work or duties owed to Plaintiffs. Defendant notes there were no issues regarding his job performance as he earned healthy bonuses relative to his salary and was given a significant raise just two months before resigning his position with Plaintiffs.

In contrast, Plaintiffs allege Defendant targeted its customers and competitors, utilized confidential information as well as Plaintiffs' business consultants to benefit AS, and engaged in business activities related to AS while attending tradeshows on behalf of Plaintiffs. Plaintiffs assert there are genuine issues of material fact which preclude granting summary judgment.

## LAW AND ANALYSIS

**I. Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is only proper where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986); *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate

---

[4] *In re Acceleration Systems, LLC*, Case No. 17-52497 (Bankr. N.D. Ohio, Eastern Division). According to Don Jacobs' Initial Affidavit in the present case, as a result of the AS bankruptcy, Plaintiffs herein purchased and now own all assets of AS. [Doc. # 36, Ex. 1 at ¶ 37].

8

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). With respect to issues on which the nonmoving party bears the burden of proof, the burden on the moving party may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *Id.* Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

## II. General Standards Regarding Exceptions to Discharge

A discharge under Chapter 7 of the Bankruptcy Code is subject to the exception of certain types of debts listed in 11 U.S.C. § 523(a). *Stamper v. United States (In re Gardner)*, 360 F.3d 551, 557 (6th Cir. 2004). Plaintiffs' non-dischargeability complaint raises three of those exceptions. First, the complaint asserts that the Kister owes Plaintiffs a debt that should be excepted from discharge under § 523(a)(2) because of conduct by him involving false pretenses or actual fraud. Second, the complaint asserts that Kister owes Plaintiffs a debt that should be excepted from discharge under § 523(a)(4) arising from conduct that amounts to embezzlement or defalcation while acting in a fiduciary capacity. Third, the complaint asserts that Kister owes Plaintiffs a debt that should be excepted from discharge under § 523(a)(6) because of conduct by him that was willful and malicious.

The statutory exceptions are intended to implement the fundamental bankruptcy policy of affording a "fresh start" only to "the honest but unfortunate debtor." *Id.* (citing *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)). In order to implement the fresh start policy, the exceptions to discharge for debts listed in § 523(a) are to be construed narrowly. *Rembert v. AT&T Universal Card Svcs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). Plaintiffs, as the persons seeking exception of an alleged debt from Kister's Chapter 7 discharge, have the burden of proof under § 523(a)(2), (a)(4) and (a)(6) by a preponderance of the evidence. *Grogan,* 498 U.S. at 291. In the procedural context of summary judgment, as the party without the burden of proof, Kister's burden is to point out to the court the absence of evidence to support Plaintiffs' claims. The court finds that Kister has properly done so. In response, Plaintiffs must set forth specific facts showing a genuine issue of fact for trial on the specified claim or claims.

Overall in this action, there has not yet been any determination in state court or otherwise that Kister owes Plaintiffs a debt, dischargeable or not. The debt(s) that Plaintiffs claim appear to be twofold: (1) bills that are actually those of AS that Plaintiffs' paid as a result of Kister's alleged wrongdoing and/or (2) certain of Plaintiffs' business losses, the latter of which they assert result from Defendant's conduct and that Defendant asserts result from market and other conditions wholly unrelated to his actions. Some

9

of the submitted evidence about which the court required supplementation relates to the issue of whether there is any debt at all owed by Kister to Plaintiffs. Plaintiffs have produced just (barely) enough proper evidence showing such losses and the proximate cause thereof, which evidence the court must construe on summary judgment in a light most favorable them as non-moving parties, to create a genuine issue of material fact for trial, at least to the extent of Plaintiffs' claims under § 523(a)(2)(A) and (a)(6).

**III. 11 U.S.C. § 523(a)(2)(A)**

Under § 523(a)(2)(A), a debt is excepted from discharge to the extent it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

In order to except a debt from discharge under § 523(a)(2)(A) as a result of a false representation, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money or services through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. *Rembert*, 141 F.3d at 280-81. The parties agree, however, that there were no false representations under § 523(a)(2)(A).

They part company regarding broader claims of false pretenses or actual fraud in this case. The Supreme Court decided in *Husky Intern. Electronics v. Ritz*, --U.S.--, 136 S.Ct. 1582 (2016), that the term "actual fraud" as used in §523(a)(2)(A) encompasses forms of fraud that can be effected even without a false representation. False pretenses may include implied misrepresentations or conduct intended to create or foster a false impression. *James v. McCoy (In re McCoy)*, 114 B.R. 489, 498 (Bankr. S.D. Ohio 1990). In comparison, actual fraud includes "'any deceit, artifice, trick, or design involving deceit and active operation of the mind, used to circumvent and cheat another.'" *Schafer v. Rapp (In re Rapp)*, 375 B.R. 421, 433 (Bankr. S.D. Ohio 2007) (citing *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (quotation omitted)).

The record before the court reflects that Defendant and McKinney discussed their plans as to AS utilizing Plaintiffs' email system. McKinney averred he utilized information learned solely through his employment with Plaintiff Satventures to put together business prospects for AS, with the express authorization of Kister. [Doc. # 39, McKinney Aff. at ¶¶ 27-28]. Kister spoke with persons at trade shows, attended on behalf of Plaintiffs, and discussed the viability of AS at those events. According to Kister, this was done only after his work for Plaintiffs was completed. It is also undisputed that Kister recruited third party independent consultants to do work for AS and those relationships were a result of

10

these consultants' work for Plaintiffs. Plaintiffs assert Kister's use of the consultants for AS and invoices submitted to Plaintiffs for "referenced services and related charges that were not performed by said consultants to Plaintiffs," [Jacobs Supplemental Aff.. at ¶ 15(b)], support their claims of fraud.

Kister contends that he kept his work related to AS under wraps, while employed by Plaintiffs, because he did not want to be sued by Don Jacobs. Deceitful iIntent of a debtor in the face of a claim of fraud is considered under a subjective standard and measured by a totality of the circumstances. *Risk v. Hunter (In re Hunter)*, 535 B.R. 203, 213 (Bankr. N.D. Ohio 2015). Even before *Ritz,* in the Sixth Circuit actual fraud has not been limited to omissions and misrepresentations but can be broader in context under § 523(a)(2)(A). *See Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001). Based upon the record properly presented, the contrary explanations under the broader rubric actual fraud and false pretenses, even without any false representations, creates material factual issues regarding Defendant's intent to deceive and witness credibility that must be resolved at trial. Therefore, Defendant's motion for summary judgment is denied as to Plaintiffs' claims under § 523(a)(2)(A).

## IV. 11 U.S.C. § 523(a)(4)

Plaintiffs contend that Kister's appropriation of confidential information and funds to AS is tantamount to defalcation while the Defendant was acting in a fiduciary capacity. Kister argues there was no written or express trust nor did his fiduciary responsibilities as a corporate officer impart liability in this instance. As Plaintiffs did not allege claims of embezzlement in their complaint but limited their claims to those of Kister's fiduciary duties[5], the court will confine its analysis to those claims.

Section 523(a)(4) exempts a debt from discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Defalcation involves a culpable "state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign*, 569 U.S. 267, 269 (2013). Whether a party acted in a "fiduciary capacity" for purposes of § 523(a)(4) is determined by federal, not state law.

---

[5] **COUNT II, FRAUD OR DEFALCATION WHILE ACTION IN A FIDUCIARY CAPACITY, EMBEZZELEMENT[sic] OR LARSONY[sic] UNDER SECTION 523(a)(4)**
    87. Plaintiffs hereby reincorporate paragraphs 1 through 86 of its Complaint.
    88. At all material times while Kister was employed by the Plaintiffs, and especially during the time that Kister was the President of Skycasters, Kister was a fiduciary of the Plaintiffs, and owed the Plaintiffs fiduciary duties of loyalty, integrity, and honesty, among other fiduciary duties. Kister breached his fiduciary duties to the Plaintiff by acting in an improper, dishonesty, disloyal, fashion lacking in any integrity whatsoever.
    89. Specifically, Kister breached his fiduciary duties to the Plaintiffs by putting the interests of himself and AS ahead of Plaintiffs and using the funds, Confidential Information and other assets of Plaintiffs for his own benefit and the benefit of AS rather than the benefit of Plaintiffs.
    90. Kister breached his fiduciary duties to the Plaintiff by improperly and dishonestly allowing McKinney to use the funds, assets, and resources of the Plaintiffs, not for the benefit of the Plaintiffs, but for the benefit of AS, and McKinney and Kister.
        a. Kister breached his fiduciary duties to the Plaintiffs by not disclosing to the Plaintiffs that he was actively setting up a competing business, and working to divert customers of the Plaintiffs to AS.
    91. As a result of the false pretenses, false representations, and/or actual fraud, as well as the concealment and failure to disclose perpetrated by Kister, Plaintiffs have suffered damages in the amount of not less than $6,000,000, which amount shall be proven at trial.

*Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005). The Sixth Circuit construes "fiduciary capacity" as used in § 523(a)(4) more narrowly than the term is used in other circumstances. *Id*. In order to trigger the fraud or defalcation provision in the statute, a debtor must hold funds in a trust for the benefit of a third party. *Id*. (citing *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997)).

The types of trusts which trigger the fraud or defalcation provision of § 523(a)(4) are "limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Baszak*, 397 F.3d at 390 (citing *In re Garver*, 116 F.3d at 180). Accordingly, "the mere failure to meet an obligation while acting in a fiduciary capacity does not rise to the level of defalcation; an express or technical trust must also be present." *Id*. To establish an express or technical trust under Ohio law, there must be (1) an intent to create the trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary. *Id*. at 391. This comports with the characterization of a fiduciary relationship as one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Ed Schory & Sons, Inc. v. Soc. Nat'l Bank*, 75 Ohio St.3d 433, 442 (1996).

Here, Plaintiffs contend the Agreement between Kister and Plaintiffs meets the requirements of a trust. The Agreement addresses the confidentiality of proprietary information related to the Plaintiffs' business; states that certain confidential information will be revealed to Kister in conjunction with his employment; that such confidential information shall not be disclosed to third parties without Plaintiffs' consent; and lists the related entities which constitute express third-party beneficiaries to the Agreement. It is a typical confidentiality and non-compete agreement that many employers require employees to sign as a condition of their employment. Without more, which has not been shown, it is insufficient to establish the existence of an express or technical trust for purposes of a fiduciary capacity under § 523(a)(4). *See Bruinsma v. Wigger (In re Wigger)*, 595 B.R. 236, 256-58 (Bankr. W.D. Mich. 2018) (durable power of attorney which did not identify specific trust res was insufficient to create a fiduciary relationship under § 523(a)(4)); *Perry v. Ichida (In re Ichida)*, 434 B.R. 852, 863 (S.D. Ohio 2010) (no fiduciary capacity of managing member who failed to comply with duties at common law or under operating agreement in the absence of an express trust); *Plumber's Edge, Inc. v. Veino (In re Veino)*, 2016 WL 6134806 at *6 (Bankr. D.N.H. 2016) (partner who entered into employment and non-compete agreement and breached fiduciary duties did not rise to the level of an express trust for purposes of § 523(a)(4)).

In addition to lacking the creation of an express trust, the Agreement does not place the Defendant in a position of superiority relative to the Plaintiffs. *See Estate of Lola Brewer v. Jones (In re Jones)*, 369

12

B.R. 340, 346 (Bankr. N.D. Ohio 2007) (debtor/financial planner was deemed a fiduciary by virtue of an investment agreement on behalf of a client). *See Lefevre v. Fritzson (In re Fritzson)*, 590 B.R. 178, 192 (Bankr. D.Conn. 2018) (noting that a § 523(a)(4) analysis requires "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter.").

Plaintiffs have not shown that there are any genuine issues of material fact with respect to the existence of an express trust. Without one, they cannot prevail as a matter of law on their § 523(a)(4) claim because there is no fiduciary relationship. The court finds that Plaintiffs have failed to show any facts that would establish as a matter of law that there is any express, technical or statutory trust. Having pointed out the absence of those facts, Defendant is therefore entitled to summary judgment in his favor on the claims of fraud or defalcation in a fiduciary capacity under § 523(a)(4).

**V. 11 U.S.C. § 523(a)(6)**

Section 523(a)(6) excepts a debt "for willful and malicious injury" by the debtor to another entity or to the property of another entity from a Chapter 7 discharge. 11 U.S.C. § 523(a)(6). To prevail under § 523(a)(6) Plaintiffs must prove that the injury from which the alleged debt arises was both willful and malicious. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999); *J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 801-02 (Bankr. N.D. Ohio 2001). The "willful and malicious standard is a stringent one…." *Steier v. Best (In re Best)*, 109 Fed. Appx. 1, 4 (6th Cir. 2004). The terms "willful" and "malicious" are distinct and both requirements must be met under § 523(a)(6*). South Atlanta Neurology and Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006).

Addressing the willful requirement of § 523(a)(6), the Supreme Court decided that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts" and held that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). A willful injury occurs when "(i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004) (citing *Markowitz*, 190 F.3d at 464).

Under § 523(a)(6), "'malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Id.* (citing *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)). "Stated differently, "[t]here must also be a consciousness of wrongdoing. . . It is this knowledge of wrongdoing, not the wrongfulness of the debtor's actions, that is the key to malicious under

13

§ 523(a)(6)." *Kraus Anderson Capital, Inc. v. Bradley (In re Bradley)*, 507 B.R. 192, 204 (B.A.P. 6th Cir. 2014) (quoting *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001)).

Here, Kister contends there is no evidence to support that there was any willful and malicious conduct on his part. He offers the affidavits of independent contractors and consultants who worked for Plaintiffs. Those affidavits consistently aver they were not asked by Kister to perform services for AS and then bill Plaintiffs for those services. [Doc. # 31, Ex. 3, 4, and 5]. Kister also offers evidence that a reduction in or losses to Plaintiffs' business (which is the alleged debt they argue Kister should be held liable for) were due to market conditions and not attributable to the actions of AS. [*Id*., Exs. 6-23].

However, the January 3, 2019, Affidavit of McKinney indicates he created a spreadsheet of possible business prospects by accessing a database subscribed to by Plaintiffs and with Kister's consent. [Doc. # 39, McKinney Aff., ¶¶ 23-24]. McKinney averred gathering information regarding business prospects known to him through his employment with Plaintiffs and with the authorization of Kister. [*Id*., at ¶¶ 27-28]. This raises an inference sufficient to create a genuine issue of material fact as to the Defendant's consciousness of wrongdoing toward Plaintiffs per *Geiger*. As the court is prohibited from engaging in fact-finding or evaluating credibility at the summary judgment stage, these issues are appropriate for trial. Accordingly, Defendant's motion for summary judgment is denied as to Plaintiffs' claims under § 523(a)(6).

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 31] be, and hereby is, **GRANTED** as to the claims under § 523(a)(4) and **DENIED** as to the remaining claims under § 523(a)(2)(A) and (a)(6). A further pretrial scheduling conference will be set by separate order of the court.

###